SACK, Senior Circuit Judge,
concurring:
I am in full agreement with the judgment of the Court. I write only to register my doubts as to one of the district court’s conclusions, which the panel’s opinion need not and, properly in my view, does not reach in the course of its remand. Were we squarely presented with the issue, I would conclude that the relevant agreements between the federal government and the tribe authorize, indeed perhaps require, the enforcement of Arizona state law by tribal police officers.
The Multi-Year Financing Agreement, as the panel opinion notes, requires the tribe to ensure that all its uniformed officers and criminal investigators maintain state “peace officer certification,” and it specifically mentions “AZPOST” certification. MYFA § 2(L). In Arizona, AZ-POST certification supplies the necessary and sufficient condition for Indian tribal officers engaged in the conduct of their employment to possess the legal powers and duties of state peace officers. See Ariz.Rev.Stat. §§ 13-3874(A), 41~1823(B). These powers and duties include the authority to enforce state law and the duty to protect the public order and make arrests. Id. §§ 13-3874(A) (providing that certified tribal officers “shall possess and exercise ” the powers of peace officers (emphasis added)); id. § 13-105(25) (defining “peace officer” as “any person vested by law with a duty to maintain public order and make arrests” (emphasis added)). Furthermore, these powers and duties extend outside the officer’s home jurisdiction under circumstances that, while limited, would include the tribal officers on the facts of this case. See id. § 13-3871(B) (empowering peace officers to enforce the law outside their home jurisdictions in circumstances enumerated in § 13-3883, which include an “actual or suspected violation of any traffic law committed in the officer’s presence”); State v. Nelson, 208 Ariz. 5, 8-9, 90 P.2d 206, 209-10 (Ct.App.2004).
In light of this certification regime, I think it apparent that the federal government and the tribe intended that tribal law-enforcement officers possess and exercise the power to enforce state law, both on the reservation and, in some cases, outside of it. The district court, to the contrary, concluded that the reference to peace officer certification is “no more than a training requirement, imposed to ensure than all tribal officers are sufficiently qualified to meet the demands of their positions.” Shirk v. United States, No. CV-09-1786, 2010 WL 3419757, at *6, 2010 U.S. Dist. LEXIS 89687, at *15 (Aug. 27, 2010).
It is with that proposition that I disagree. AZPOST certification is more than a confirmation that the recipient has been adequately and appropriately trained—it confers specified powers and imposes specified duties on all officers so certified. Inasmuch as the tribe and the government have explicitly referenced AZPOST in their agreement, I cannot but conclude that they intended that officers of the tribe’s law enforcement program possess these legally defined powers and duties.
The district court’s contrary interpretation was premised on its assumption that the 638 Contract of 1998 sets outer limits *1010 of the tribe’s duties and authority under the relevant agreements. See id. On remand, as the Court’s opinion makes dear, the district court should consider whether the 638 Contract even applied at the time of the conduct giving rise to this claim. Panel Op., at 1007-08. Even if the 638 Contract did apply, the district court should consider whether the later Compact and funding agreement, by specifically referring to peace-officer certification, effectively amended and expanded the earlier contract with respect to the enforcement of state law.
I think these considerations may have substantial impact on the district court’s analysis under the two-step approach established by the Court’s opinion today. We cannot decide how this analysis should be conducted, however, without first knowing which of the federal-tribal agreements submitted in this case were in force at the time of the accident, and how these agreements relate to each other. For this reason, I fully concur in the panel’s opinion and decision to vacate and remand for further factfinding.